UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
EMRON FITZROY RICKETTS,                                       :
                                        Petitioner,           :
                                                              :
            -against-                                         :
                                                              :
RAY SIMONSE, et al.;                                          :
                                        Respondents.          :
                                                              :
------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/16/2016

16 Civ. 6662 (LGS)

OPINION AND ORDER

LORNA G. SCHOFIELD, District Judge:

Petitioner Emron Fitzory Ricketts, a native and citizen of Jamaica, is a lawful permanent resident ("LPR") of the United States who is being detained by U.S. Immigration and Customs Enforcement ("ICE") pursuant to 8 U.S.C. 1225(b)(2)(A) during the pendency of his immigration proceedings. He filed a Petition for a Writ of Habeas Corpus seeking an Order that directs Respondents to release him immediately on his own recognizance or under parole, bond or reasonable supervision, or in the alternative, an order for an individualized bond hearing. For the reasons below, Petitioner's request for a Writ of Habeas Corpus and an individualized bond hearing is granted.

I.      BACKGROUND

Petitioner entered the United States in 2010 as an LPR based on a petition brought by his mother, who is a U.S. citizen. In May 2014, Ricketts returned to Jamaica for the first time. On June 10, 2014, he was arrested upon his return at John F. Kennedy International Airport after Customs and Border Protection ("CBP") found him in possession of cocaine.

Petitioner was arraigned on June 17, 2014, and released on an appearance bond. Ricketts was indicted on July 3, 2014, pleaded guilty to one count of importation of cocaine, pursuant to 21 U.S.C. § 952(a) and 21 U.S.C. § 960(b)(3), and was sentenced to eight months of home

confinement and three years of probation.

Over a year later, on April 19, 2016, Petitioner was arrested by ICE in Brooklyn, New York, issued a notice to appear ("NTA") charging him as removable under 8 U.S.C. § 1227(a)(2)(A)(iii) (aggravated-felony conviction) and § 1227(1)(2)(B)(i) (controlled-substance conviction). On July 1, 2016, ICE amended the NTA to lodge additional charges of removability under 8 U.S.C. § 1182(a)(2)(A)(i)(II) (inadmissible because of controlled-substance offense) and § 1182(a)(2)(C) (inadmissible because of involvement in controlled-substance trafficking). Petitioner has been detained since his arrest. Petitioner filed the present habeas petition challenging his continued detention on August 29, 2016.

## II.     LEGAL STANDARD

"The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The allegations of a return to the writ of habeas corpus or of an answer . . . if not traversed, shall be accepted as true except to the extent that the judge finds from evidence that they are not true." 28 U.S.C. § 2248.

## III.    DISCUSSION

In order to avoid constitutional concerns, in accordance with the Second Circuit's recent decision in *Lora v. Shanahan*, 804 F.3d 601 (2015), 8 U.S.C. § 1225(b)(2)(A) is construed to include a reasonable six-month limitation on mandatory detention. Petitioner is entitled to an individualized bond hearing because his prolonged detention pursuant to 8 U.S.C. § 1225(b)(2) violates his Fifth Amendment right to due process. *See Arias v. Aviles*, No. 15 Civ. 9249, 2016 WL 3906738 (S.D.N.Y. July 14), *appeal filed*, No. 16-3186 (2d Cir. Sept. 12, 2016); *Saleem v. Shanahan*, No. 16 Civ. 808, 2016 WL 4435246 (S.D.N.Y. Aug. 22), *appeal filed*, No. 16-3587

(2d Cir. Oct. 21, 2016.  *But see Perez v. Aviles*, No. 15 Civ. 5089, 2016 WL 3017399 (S.D.N.Y. May 24, 2016); *Cardona v. Nalls-Castillo*, No. 15 Civ. 9866, 2016 WL 1553430 (S.D.N.Y. Apr. 14, 2016).

Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2), which provides:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding.

8 U.S.C. § 1225(b)(2).  The length of detention is not limited by anything in the statute or associated regulations.  *Id.*  An LPR "shall not be regarded as seeking admission to the United States for purposes of the immigration laws" unless the individual falls into one of six categories, for example, someone who "has been absent from the United States for a continuous period in excess of 180 days" or who "has engaged in illegal activity after having departed the United States."  8 U.S.C. § 1101(a)(13)(C).  Here, the Government asserts, supported by documentation, that Petitioner was paroled into the country, not formally admitted, and therefore falls into the ambit of 8 U.S.C. § 1225(b)(2) as an alien seeking admission subject to mandatory detention during the pendency of his removal proceedings.[1]

### A. Due Process

"All aliens present inside the United States are entitled to due process."  *Arias*, 2016 WL

---

[1] Petitioner initially argues that he was improperly deemed an "arriving alien" because he "had no criminal record and did not fall into any of the § 1101(a)(13)(C)(v) categories."  Petitioner does not address whether he contends that he was an arriving alien as a result of "engag[ing] in illegal activity after having departed the United States," 8 U.S.C. § 1101(a)(13)(C)(iii), as he appears to be.  *See Gonzaga-Ortega v. Holder*, 736 F.3d 795, 799 (9th Cir. 2012) ("[T]he border officers were permitted to treat [petitioner] as an applicant for admission based on their conclusion that Gonzaga had engaged in illegal activity, without waiting for a final administrative determination.").  However, Petitioner appears to have waived the argument against the Government's contention that he was paroled into the country by not addressing it in his reply.

3906738, at *4; *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). Despite this clear statement on the protections of the due process clause, the Government, relying on *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), argues that because Petitioner was paroled into the U.S. rather than being formally admitted, he is still "seeking admission" and his detention without the possibility of release does not violate the Constitution. The Government argues that Petitioner, like *Mezei*, is entitled to a lesser amount of due process, noting "an alien on the threshold of initial entry stands on a different footing" than an alien within the United States; that an alien's detention at the border does not violate due process; and that "the power to expel or exclude aliens" is a "fundamental sovereign attribute exercised by the Government's political departments." *Id.* at 210, 212. This reliance is misplaced. *Mezei* involved an LPR who had remained abroad behind the Iron Curtain in the midst of the Cold War for 19 months, was regarded as a security risk, and was subsequently detained on Ellis Island. *Id.* at 208. As a consequence, the Supreme Court reasoned that *Mezei*, rather than being treated as a continuously present LPR, was an "entrant alien or assimilated to that status for constitutional purposes." *Id.* at 214.

Even while treating *Mezei* as an excludable alien, the Supreme Court nevertheless recognized in its decision that an LPR "may not captiously be deprived of his constitutional rights to procedural due process" and recognized that "[o]nly the other day we held that under some circumstances temporary absence from our shores cannot constitutionally deprive a returning lawfully resident alien of his right to be heard." *Id.* at 213 (citing *Kwong Hai Chew v. Colding*, 344 U.S. 590, 601 (1953)).

In *Kwong Hai Chew*, decided just weeks before *Mezei*, the Supreme Court decided that Kwong Hai Chew, a permanent resident who left the U.S. for four months on an American merchant vessel, was regarded as an alien "continuously residing and physically present in the United States." *Kwong Hai Chew*, 344 U.S. at 596.  The Court reasoned that an LPR like Kwong Hai Chew was "a person within the protection of the Fifth Amendment" who "may not be deprived of his life, liberty or property without due process of law." *Id.*  Relying on *Kwong Hai Chew* thirty years later, the Supreme Court in *Landon v. Plasencia*, 459 U.S. 21 (1982), held that even an LPR who briefly left the country to attempt to illegally smuggle aliens across the border had due process rights.  *Id.* at 33-34.

Here, in contrast to *Mezei*, Petitioner, an LPR, was absent from the United States for only a few weeks and, after being caught with drugs at the airport, was released on bond and allowed into the United States during the pendency of his criminal case.  Although subjected to a period of home confinement as a result of his criminal case, he was not arrested by ICE until almost two years later.  Consequently, Petitioner is entitled to due process.

### B. Mandatory Detention

The Government also argues that even if Petitioner is entitled to due process, his detention pursuant to § 1225(b) does not violate due process because it serves the purpose of ensuring his appearance for removal proceedings and his availability for removal.  While these reasons may provide a rationale for detention, the same reasons applied in other circumstances where mandatory detention has been construed to contain a six-month limit.  For detention pursuant to § 1225(b) to be reasonable, like mandatory detention under § 1226(c), it must be for a brief period of time.  *Lora*, 804 F.3d at 614.

Over the last two decades, federal courts have addressed mandatory detention in other

contexts and construed the applicable statutes to include presumptive temporal limits to avoid constitutional problems.  Immigration law currently imposes mandatory detention in two other circumstances:  Section 1231(a) imposes mandatory detention on individuals who have already been ordered removed from the United States, and section 1226(c) imposes mandatory detention on individuals who are inadmissible or deportable due to certain criminal convictions.  8 U.S.C. § 1231(a); 8 U.S.C. § 1226(c).

In *Zadvydas*, the Supreme Court addressed the detention of two non-citizens under the statue governing detention following a removal order and held that detention beyond six months was presumptively unreasonable in that context.  *Zadvydas*, 533 U.S. at 701.  The Supreme Court stated that its decision "[did] not mean that every alien not removed must be released after six months," *id.*, but established that after six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.*  In arriving at its decision, the Supreme Court reasoned that "a statute permitting indefinite detention of an alien would raise a serious constitutional problem."  *Id.* at 690.

In *Lora*, the Second Circuit addressed mandatory detention under section 1226(c).  Petitioner Alexander Lora was a LPR detained by the Department of Homeland Security pursuant to 8 U.S.C. § 1226(c) following his conviction and release from a prison term for drug offenses.  *Lora*, 804 F.3d at 604.  Lora challenged his mandatory detention and the Second Circuit agreed, holding that "in order to avoid serious constitutional concerns, section 1226(c) must be read as including an implicit temporal limitation."  *Id.* at 614.  In reaching its decision in *Lora*, the Second Circuit drew on *Zadvydas* and *Demore v. Kim*, 538 U.S. 510 (2003), observing "[t]wo years later [i.e., after *Zadvydas*], when the court upheld the constitutionality of section 1226(c) in

*Demore v. Kim*, it emphasized that for detention under the statue to be reasonable, it must be for a brief period of time." *Id.* at 613-14.

Joining the Ninth Circuit, *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013), and drawing on the Supreme Court's prior decisions, *Lora* established a bright-line presumptively reasonable period of detention of six months. "*Zadvydas* and *Demore*, taken together, suggest that the preferred approach for avoiding due process concerns in this area is to establish a presumptively reasonable six-month period of detention." *Id.* at 615. After six months, the Second Circuit held "that the detainee must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." *Id.* at 616 (citing *Rodriguez*, 715 F.3d at 1131).

In accordance with these prior decisions and so as not to afford aliens detained and awaiting removal pursuant to § 1226(c) greater protections post-*Lora*, detention pursuant to § 1225(b) must be construed to contain a reasonableness limitation of six months. As *Arias* recognized, "[t]he opposite conclusion could yield undesirable results post-*Lora* . . . . [S]uch a decision could result in affording more protections to non-resident aliens detained under § 1226(c), and for whom removal is authorized by law, than to LPRs detained pursuant to § 1225(b) and merely accused of wrongdoing." *Arias*, 2016 WL 3906738, at *9.

The Government contends that the due process concerns are ameliorated by the availability of parole for release from detention. However, parole is a discretionary decision made within the Department of Homeland Security without the review by an immigration judge or federal court. An LPR like Petitioner, "who cannot argue that humanitarian reasons or the public benefit compel his release, will remain detained without a bail hearing until the conclusion of his removal proceedings . . . a constitutionally impermissible result." *Id.* at *10. The

7

Government also argues that offering a bail hearing will "create incentives for aliens to contest issues and prolong proceedings in order to be released." This is not a reason to deny constitutional rights. Detention under § 1225(b)(2) is civil in nature and, as the Second Circuit recognized, "endless months of detention, often caused by nothing more than bureaucratic backlog, has real life consequences for immigrants and their families." *Lora*, 804 F.3d at 616. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

In order to avoid the constitutional concerns raised by indefinite and prolonged detention, Petitioner must be afforded a bail hearing before an Immigration Judge and, consistent with *Lora*, "must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." 804 F.3d at 616.

## IV.    CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus is GRANTED. Within seven calendar days of the date of this Order, Respondents shall provide an individualized bond hearing to Petitioner to determine whether his detention is justified. Should they fail to provide such a hearing, Respondents shall release Petitioner from detention. The Government shall provide a status letter to update the Court about Petitioner's status by December 23, 2016.

The Clerk of Court is respectfully requested to close this case.

SO ORDERED.

Dated: December 16, 2016
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

8